IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LEGACY, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No.  05 C 5431 |
| ) | |
| TEKSERVE POS, LLC, a Minnesota ) | |
| limited liability corporation, ) | |
| et al., ) | |
| ) | |
| Defendants. ) | |

<u>MEMORANDUM OPINION AND ORDER</u>

At last the briefing on the months-long-pending motion by Legacy, Inc. ("Legacy") against defendant Kurt Allseitz ("Allseitz") for sanctions, stemming from his spoliation of evidence, has just been completed. There is no question (although Allseitz' counsel do not acknowledge it in their just-filed surreply) that the problem--indeed, this lawsuit itself--had its inception in the impermissible downloading to Allseitz' personal computer of Legacy business material that he had no business taking with him when he quit its employ, so that if the issue were to be examined in "but for" terms alone, Legacy might perhaps mulct Allseitz in the kind and quantum of sanctions that it seeks.

In that respect it is really troublesome to read, in the first paragraph of Allseitz' current <u>Introduction</u> section, his counsel's characterization of this action as an "ill-conceived lawsuit." Legacy can hardly be faulted for having reacted with a

lawsuit in response to Allseitz' departure without notice and to its discovery of his having downloaded some of Legacy's confidential information onto his own personal computer. Legacy was certainly entitled to learn whether its rights were being violated, and bringing suit was the logical way (and most likely the only way) to do that.

Nor can Allseitz take credit for the fact, learned by Legacy and this Court once the lawsuit was under way, that his new employer Tekserve POS, LLC ("Tekserve") was meticulous about taking steps to avoid its getting the benefit of Allseitz' improper conduct. And this Court finds Allseitz to be disturbingly disingenuous in his disclaimer of the fact that his knowledge of this litigation is what motivated his destruction of the hard drive in question. Here is this Court's Finding 30, part of its March 14, 2006 Findings and Conclusions after conducting a three-day evidentiary hearing on Legacy's motion for preliminary injunction:

> 30. There is no question that at the time of leaving Legacy Allseitz' personal computer contained confidential Legacy materials. On September 22, the day after this lawsuit was filed, Allseitz discarded the hard drive on his personal computer. After considering the extensive Hearing testimony on the subject, this Court finds Allseitz' explanations on all those aspects to be unworthy of belief. Although it is of course impossible to know the mind of man, the objective evidence strongly suggests that Allseitz, concededly an unhappy Legacy employee and actively looking elsewhere, had accumulated corporate information in the hope and expectation that it could serve him well in obtaining and performing other

employment. When his new employer Tekserve made it clear that it expected him to live up to his obligations to Legacy and that was swiftly followed by a Tekserve lawsuit, Allseitz decided to dispose of the evidence.

At the same time, this Court believed when the issue of sanctions was first broached (and it continues to believe now) that Legacy's seeking of a default judgment against Allseitz and seeking to bar his employment with Tekserve because of his misfeasance would be impermissibly punitive rather than remedial. Instead, as this Court stated during the course of the preliminary injunction hearing:

> THE COURT: One thing that strikes me as a possibility when we talk about sanctions for this kind of conduct is a possibility of fee shifting--that is, the idea that to the extent that incremental expense can be identified as having been thrust on Legacy by reason of his activity, that's a cost he ought to bear. And that's a possibility that has struck me in connection with thinking about this again in contrast to the idea of actually injuring him in terms of depriving him of livelihood, which I told Mr. Marconi and I will say again, it doesn't seem to me that's really--despite the difficulty that I have seeing conduct of this nature, it doesn't strike me as really an appropriate remedy because I think it's too stiff.

With those preliminaries (not quite amounting to Mercutio's "a plague o' both your houses") out of the way, this opinion turns to the question of such incremental expenses. On that score Allseitz cannot credibly urge that Legacy should have taken his word as to the materials that he had taken with him, or as to whether he could improperly make use of any such materials to his detriment. For its part, what Legacy has done in its Reply

3

Memorandum is to urge, with some persuasiveness, that this lawsuit would not have been brought at all if Allseitz had not downloaded its proprietary materials--as it points out at the outset of its February 16, 2007 Reply:

> 1. This entire lawsuit stems from the deceitful and deceptive acts of one person: Kurt Allseitz.
>
> 2. Prior to Allseitz's departure from Legacy in August 2005, other employees had left legacy without the need for resort to litigation. Mark Kling had left Legacy more than a year prior. David Bychowski and Jesus Medina also left without Legacy seeking recourse to the courts.
>
> 3. However, upon Allseitz's departure, Legacy conducted an examination of Allseitz's work computer and discovered that Allseitz had copied and printed numerous customer and pricing files in the days leading up to his departure. Legacy then investigated further and found that Allseitz had made several early morning trips to Legacy's offices when the copying was done.
>
> 4. Obviously, Legacy was left to think that Allseitz had copied the information to bring with him and use during his subsequent employment with one of Legacy's biggest competitors, Tekserve POS, LLC ("Tekserve"). Legacy filed this lawsuit in an effort to determine exactly what Allseitz had improperly copied and taken from Legacy and to prevent Legacy's competitor, Tekserve, from benefiting from Allseitz's conduct.

As persuasive as that may be, the proper focus for both sides now is on Allseitz' post-filing spoliation of evidence and on what _that_ has cost Legacy. Thus all of the work done by Walter Kay ("Kay") and Mitch Litle ("Litle") _before_ this lawsuit was filed, for example, was caused by the fact of Allseitz' downloading of the files, not by the spoliation through the

4

destruction of his computer hard drive.

That being the case, Legacy cannot fairly obtain, as a remedy for the spoliation, reimbursement for the entire 204.8 hours of Kay's and Litle's time itemized in its Reply. Nor can it fairly stick Allseitz with the entire $34,000-odd total of attorneys' fees set out in attorney Joseph Marconi's affidavit and the attached itemization of legal services. It is impossible for this Court to determine from Legacy's current submission how much of each category of expense fits the "incremental" concept--that parsing is for the parties to address in meaningful terms in the first instance. But on the other side of the coin, such attempted overreaching by Legacy does not call for letting malfeasant Allseitz off the hook, as his current surreply would have it.[1]

Instead Legacy's counsel must go back to the drawing board to pare down the requested fees and expenses to those having a proximate causal nexus to the spoliation. For example (and not by way of limitation), the extent to which the completion of the Kay-Litle post-filing investigation, after Legacy had unsuccessfully requested access to Allseitz' computer, was

---

[1] It should be said that this Court's rejection of some of the fees and expenses as a remedy for the spoliation of evidence does not necessarily preclude Legacy's possible recovery of the excluded items as an element of damages (rather than sanctions) if Legacy ultimately succeeds on the merits of the litigation. That possibility of course remains for the future.

5

rendered more expensive because of the hard drive's destruction should be shifted to Allseitz as an appropriate sanction. And the same type of parsing should take place as to Legacy's attorneys' fee claim.

Better still, this Court recommends that counsel for the parties promptly confer to see whether the gulf that now separates them can be bridged or, if not, whether the matter can be better distilled in accordance with what has been said here. In that way it may be possible to present the matter to this Court to enable it to bridge a more limited gap.

In the meantime Legacy's motion for sanctions as a remedy for Allseitz' spoliation is granted, though the precise quantification of those sanctions remains for future determination. Allseitz is certainly not entitled to escape scot-free, as his counsel asserts by way of counter-overreaching in their just-filed surreply (Surreply at 12 and 14):

> Because of Legacy's egregious overreaching on the issue of "incremental expenses," this Court should deny sanctions altogether.
>
>    \*   \*   \*
>
> Legacy has forfeited its right to establish that it is entitled to monetary sanctions.

_____
Milton I. Shadur
Senior United States District Judge

Date: March 12, 2007